**BRODSKY & SMITH, LLC**
Evan J. Smith (SBN 242352)
esmith@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Tel.: (877) 534-2590
Fax: (310) 247-0160

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRIS ROBINSON, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MULESOFT, INC., GREG SCHOTT, MARK BURTON, MICHAEL CAPELLAS, STEVEN COLLINS, GARY LITTLE, RAVI MHATRE, MARCUS RYU, YVONNE WASSENAAR, ANN WINBLAD, MALBEC ACQUISITION CORP., and SALESFORCE.COM, INC,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Chris Robinson ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of MuleSoft, Inc. ("MuleSoft" or the "Company") against MuleSoft's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(e) and 20(a) of the Securities Exchange

1
CLASS ACTION COMPLAINT

Act of 1934, arising out of the Board's attempt to sell the Company to salesforce.com, inc. through its wholly-owned subsidiary Malbec Acquisition Corp. ("Merger Sub" and collectively with salesforce.com, inc. "Salesforce").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") to be filed with the Securities and Exchange Commission ("SEC") on April 2, 2018. The Recommendation Statement recommends that MuleSoft stockholders tender their shares in favor of a proposed transaction (the "Proposed Transaction") whereby MuleSoft is acquired by Salesforce. The Proposed Transaction was first disclosed on March 20, 2018, when MuleSoft and Salesforce announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Salesforce will acquire all of the outstanding shares of common stock of MuleSoft for $36.00 and 0.0711 shares of Salesforce common stock per share (the "Merger Consideration"). The deal is valued at approximately $6.5 billion and is expected to close by July 31, 2018.

3.     MuleSoft has created a product that makes it possible for companies to collect and analyze information from various parts of their information technology infrastructure. Since introducing the product, called Anypoint Platform, MuleSoft's revenues have grown dramatically. The Company has predicted that in 2021, the Company will bring in $1 billion in revenue.

4.     Despite MuleSoft's prospects, the Board agreed to sell the Company to Salesforce in a process that lasted just a few weeks. No market check was conducted. And given the possibility of $1 billion in revenues in just a few short years, the Merger Consideration does not maximize stockholder value. Indeed, the *Illustrative Present Value of Future Share Price Analysis* conducted by Goldman Sachs & Co. LLC ("Goldman Sachs"), MuleSoft's financial advisor, found an implied value for MuleSoft as high as $46.49 per share for 2021.

5.     Furthermore, the Recommendation Statement is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the Recommendation Statement contains materially incomplete and misleading information concerning the sales process, financial projections prepared by MuleSoft

2
CLASS ACTION COMPLAINT

management, as well as the financial analyses conducted by Goldman Sachs.

6. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is included in an amendment to the Recommendation Statement or otherwise disseminated to MuleSoft's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

7. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of MuleSoft.

8. Defendant MuleSoft is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 77 Geary Street, Suite 400, San Francisco, California 94108. MuleSoft common stock trades on NYSE under the ticker symbol "MULE." MuleSoft's Anypoint Platform allows customers to connect different parts of their IT infrastructure into an "application network." This network provides customers with the ability to manage and analyze data from any of their IT sources.

9. Defendant Greg Schott has been CEO of the Company and a director of the Company since 2009. Schott was President of the Company from March 2009 to November 2016

10. Defendant Mark Burton has been a director of the Company since 2009.

11. Defendant Michael Capellas has been a director of the Company since 2015.

12. Defendant Steven Collins has been a director of the Company since 2014.

13. Defendant Gary Little has been a director of the Company since 2006. Little is a Partner at Morgenthaler Ventures, a venture capital fund, and is a General Partner at Canvas Venture, an early-stage venture capital fund. After MuleSoft's IPO, Morgenthaler Partners held 7.3% of MuleSoft's voting power.

14. Defendant Ravi Mhatre has been a director of the Company since 2007. Mhatre is a co-founder and managing director at Lightspeed Venture Partners. After MuleSoft's IPO, Lightspeed Venture Partners held 16.8% of MuleSoft's voting power.

15. Defendant Marcus Ryu has been a director of the Company since December 2017.

16. Defendant Yvonne Wassenaar has been a director of the Company since December 2017.

17. Defendant Ann Winblad has been a director of the Company since 2006. Winblad is a co-founder and Managing Director at Hummer Winblad Venture Partners. After MuleSoft's IPO, Hummer Winblad Venture Partners held 15.5% of MuleSoft's voting power.

18. Defendants Schott, Burton, Capellas, Collins, Little, Mhatre, Ryu, Wassenaar and Winblad are collectively referred to herein as the "Board."

19. Defendant salesforce.com, inc. is a Delaware corporation based in San Francisco, California.

20. Defendant Merger Sub is a Delaware corporation and is a wholly owned subsidiary of Salesforce.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

22. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) MuleSoft maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**CLASS ACTION ALLEGATIONS**

24. Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of MuleSoft common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

25. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of March 16, 2018, MuleSoft had approximately 92.6 million shares of Class A common stock outstanding and 40.6 million shares of Class B common stock outstanding.

(b) Questions of law and fact are common to the Class, including, inter alia, the following:

(i) Whether Defendants have violated Section 14(e) of the Exchange Act;

(ii) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii) Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to fail to file an amendment to the Recommendation Statement with the SEC or otherwise disseminate the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v) whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c) Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)  Plaintiff's claims are typical of those of the other members of the Class.

(e)  Plaintiff has no interests that are adverse to the Class.

(f)  The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)  Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)  Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A. The Board Agrees to Sell MuleSoft in a Matter of Weeks Despite Strong Growth Prospects**

26.  MuleSoft was founded in 2006 to integrate internet technology systems. In 2011, the Company launched CloudHub, which allowed customers to connect their data, devices and applications via the cloud. Two years later, in 2013, MuleSoft launched a product to manage application programming interfaces ("APIs"). In 2014, MuleSoft launched Anypoint Platform, which combined these concepts into one service. With Anypoint Platform, customers can connect their internet technology infrastructure via APIs, whether that infrastructure consists of physical servers or a web-based software program. The Anypoint Platform can integrate data, devices and applications so that information is easily found, organized and utilized.

27.  As of March 2017, MuleSoft had more than 1,070 customers with an average annual contract value of $169,000. Revenues had grown from $57.6 million in 2014 to $187.7 million in 2016. At that time, MuleSoft estimated its share of the market to be $29 billion.

28.  Before MuleSoft went public in March 2017, it had a private market valuation of $1.5 billion. The price range for the initial public offering was $14.00 to $16.00. But the share price closed at $24.75 the first day of trading.

29. The Company's performance has supported its impressive market entrance. On May 4, 2017, the Company issued a press release announcing a 56% year-over-year increase in revenue for the first quarter of 2017. Revenue increased 57% year-over-year in the second quarter of 2017, and the same for third quarter 2017. MuleSoft announced on February 15, 2018 that revenue had increased 60% year-over-year in the fourth quarter of 2017 and 58% year-over-year for fiscal year 2017. Less than two weeks later, MuleSoft announced that it had set a revenue target of $1 billion for fiscal year 2021.

30. The impressive growth was no fluke but the product of the Company's superior software. There is strong demand for the Anypoint Platform and its ability to organize and access data across various parts of infrastructure. Customers utilizing the Anypoint Platform are likely to increase their spending as they use the platform, which can lead to stable profits. In a November 2, 2017 presentation, the Company touted its financial performance and growth prospects, noting its retention and model for long-term growth:



### Driving Towards a Profitable Long-Term Model

| Non-GAAP % of Revenue (see Appendix for GAAP reconciliation) | 2014 | 2015 | 2016 | Q3-17 | Long-Term |
|---|---|---|---|---|---|
| Gross Margin | 71% | 71% | 74% | 73% | 80-85% |
| Research & Development | 29% | 20% | 16% | 21% | 14-16% |
| Sales & Marketing | 101% | 80% | 61% | 60% | 35-40% |
| General & Administrative | 20% | 18% | 15% | 14% | 8-10% |
| Operating Margin | -79% | -47% | -17% | -22% | 20-25% |

Note: Non-GAAP numbers exclude stock-based compensation and other compensation expenses.
All contents © MuleSoft Inc. Proprietary and Confidential

33

31. Even analysts have recognized MuleSoft's performance and prospects. On April 11, 2017, eight firms initiated coverage on MuleSoft, setting price targets of $22.00 to $30.00 per share. Within a year, price targets had increased: Goldman Sachs had raised its price target from $22.00 to $38.00 per share; Canaccord Genuity raised its price target from $24.00 to $33.00 per share; Oppenheimer raised its price target to $38.00 per share. On October 23, 2017, Richard Davis, analyst with Canaccord Genuity, stated that he "likes [MuleSoft's] strategic positioning for LT growth and believes the stock can outperform the overall market noting the valuation is not as expensive as it appears."[1] On January 8, 2018, Raimo Lenschow, an analyst with Barclays, stated that MuleSoft has a "healthy growth profile."[2]

32. Yet on March 20, 2018, one year after MuleSoft's initial public offering, the Board

---

[1] "Canaccord Genuity Upgrades MuleSoft Inc. (MULE) to Buy," StreetInsider.com, October 23, 2017, *available at* https://www.streetinsider.com/Analyst+Comments/Canaccord+Genuity+Upgrades+MuleSoft+Inc.+%28MULE%29+to+Buy/13410771.html.

[2] "Barclays Upgrades MuleSoft Inc. (MULE) to Overweight," StreetInsider.com, January 8, 2018, *available at* https://www.streetinsider.com/Analyst+Comments/Barclays+Upgrades+MuleSoft+Inc.+%28MULE%29+to+Overweight/13662304.html.

entered into the Merger Agreement with Salesforce.

33. The Proposed Transaction does not maximize value for MuleSoft stockholders. Instead, it is Salesforce who will reap the rewards of MuleSoft's prospects. In a Form 8-K filed with the SEC on March 20, 2018, Salesforce indicated that it expected the Proposed Transaction to increase its revenue by $1 billion for its fiscal year ending January 31, 2022, reduce its non-GAAP operating margin improvement target for its fiscal year ending January 31, 2019. In a conference call on March 20, 2018 with analysts, Vice Chairman, President and COO of Salesforce Keith Block stated: "leveraging the power of both of these companies together, we think, will drive a very, very strong revenue synergy."

34. Salesforce is already advertising MuleSoft on its website:



35. The Salesforce website even includes mockups of what the Integration Cloud will look like, utilizing information captured through MuleSoft's Anypoint Platform:



10
CLASS ACTION COMPLAINT

36. It is clear that the Proposed Transaction will benefit Salesforce, but it is not clear that the Board considered how it would benefit MuleSoft stockholders. The Board agreed to sell the Company to Salesforce less than one month after Salesforce first suggested a strategic transaction between the two companies. No market check was conducted. No outreach made to determine if other companies might be interested in acquiring MuleSoft. Instead, the Board conducted a swift process that has eliminated the stockholders' ability to benefit in MuleSoft's success.

**B. MuleSoft's Officers Stand to Receive Benefits Unavailable to the Class**

37. The Recommendation Statement acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

38. Stock options and restricted stock units that have been awarded to and are held by MuleSoft's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. The treatment of these equity awards, in addition to benefits provided to executive officers through MuleSoft's Severance Policy, will create a windfall for MuleSoft's executive officers that is unavailable to the common stockholders. As demonstrated in the following chart, the executive officers of MuleSoft in total stand to receive up to $75 million, if they are let go without "cause" or voluntarily leave for "good reason" after the Proposed Transaction closes:

| Name | Total Option Consideration | Total RSU Consideration | Cash Severance Payment | Additional Payments |
|---|---|---|---|---|
| *Named Executive Officers* | | | | |
| Greg Schott | $16,070,200 | – | $94,231 | $3,500 |
| Mark Dao | $17,423,741 | – | $43,077 | $1,750 |
| Rob Horton | $9,965,187 | $1,138,859 | $49,760 | $2,250 |
| Matthew Langdon | $2,216,415 | $1,942,435 | $50,000 | $2,000 |
| Simon Parmett | $22,208,970 | $3,885,230 | $63,462 | $2,750 |

39. The members of the Board and the executive officers stand to gain handsomely even if they stay on after the Proposed Transaction closes. In total, as demonstrated in the following chart, the executive officers and Board members will obtain almost $943 million:

11
CLASS ACTION COMPLAINT

| Name | Total Share Consideration | Total Option Consideration |
|---|---|---|
| *Named Executive Officers* | | |
| Greg Schott | $89,474,344 | $66,241,622 |
| Mark Dao | $65,988 | $17,281,122 |
| Rob Horton | $12,679,629 | $4,266,707 |
| Matthew Langdon | $2,031,183 | $23,649,671 |
| Simon Parmett | $11,108,524 | $21,951,646 |
| *Directors* | | |
| Mark Burton | – | $13,110,490 |
| Michael Capellas | – | $5,012,898 |
| Steven Collins | – | $5,912,973 |
| Gary Little | $2,919,286 | – |
| Ravi Mhatre | $637,271,727 | – |
| Marcus Ryu | – | – |
| Yvonne Wassenaar | – | – |
| Ann Winblad | $29,991,368 | – |

**The Preclusive Deal Protection Devices**

40.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

41.     By way of example, section 6.3(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging any inquiry or offer that could lead to an acquisition proposal. Section 6.3(a) further demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

42.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Salesforce. For example, pursuant to section 6.3(c) of the Merger Agreement, the Company must notify Salesforce of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, section 6.3(e) requires that the Board grant Salesforce four (4) business days to negotiate the terms of the Merger Agreement to render the proposal no longer superior. Salesforce is able to match the unsolicited offer because, pursuant to section 6.3(c) of the Merger Agreement, the Company must provide Salesforce with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the

Company has in receiving the unsolicited offer.

43.     In other words, the Merger Agreement gives Salesforce access to any rival bidder's information and allows Salesforce a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for MuleSoft, because the Merger Agreement unfairly assures that any "auction" will favor Salesforce and allow Salesforce to piggy-back upon the due diligence of the foreclosed second bidder.

44.     In addition, pursuant to section 9.3(b)(iii) and (iv) of the Merger Agreement, MuleSoft must pay Salesforce a termination fee of $187 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

45.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Salesforce's inadequate offer price.

**C.  The Materially Incomplete and Misleading Recommendation Statement**

46.     The Individual Defendants owe the stockholders a duty of candor. They must disclose all material information regarding the Proposed Transaction to MuleSoft stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

47.     On April 2, 2018, Defendants filed the Recommendation Statement with the SEC. The purpose of the Recommendation Statement is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, MuleSoft shareholders cannot make a fully informed decision concerning whether or not to vote in favor of

the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

48. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Recommendation Statement indicates that in connection with the rendering of Goldman Sachs's fairness opinion, Goldman Sachs reviewed "certain internal financial analyses and forecasts for MuleSoft prepared by its management as approved for Goldman Sachs' use by MuleSoft . . .." Accordingly, the Recommendation Statement should have, but failed to, provide certain information in the projections that MuleSoft's management provided to the Board and Goldman Sachs.

49. Notably, Defendants failed to disclose the financial projections for fiscal years 2018 to 2037 for: (a) revenue (subscription and services); (b) costs of revenue (subscription, services and total); (c) research and development expense; (d) sales and marketing expense; (e) G&A expense; (f) interest income; (g) interest expense; (h) income taxes; (i) capital expenditures; (j) changes in net working capital; (k) any other line items used in the calculation of "cash flow"; and (l) the "NOL Forecasts." In addition, the Recommendation Statement has not disclosed the definition of "cash flow," which is used as the base for the calculation of both Unlevered Free Cash Flow metrics presented in the projections. This omitted information is necessary for MuleSoft stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

50. Finally, despite the fact that Goldman Sachs utilized, and relied upon, the forecasts for Salesforce in arriving at its fairness opinion, all projections of future cash flows of Salesforce are omitted. Given that a portion of the consideration offered is in Salesforce stock, a proper evaluation of that consideration requires the inclusion of these projections. Without these Salesforce projections MuleSoft stockholders are incapable of making an informed tender decision concerning the acceptance of that consideration.

### *Materially Incomplete and Misleading Disclosures Concerning Goldman Sachs's Financial Analyses*

51. With respect to the *Selected Companies Analysis,* the Recommendation Statement fails to disclose the multiples for EV/NTM Revenue (as of March 19, 2018) for each company analyzed. The Recommendation Statement also fails to disclose whether Goldman Sachs performed any type of benchmarking analysis for MuleSoft in relation to the companies analyzed.

52. With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose whether Goldman Sachs performed any type of benchmarking analysis for MuleSoft in relation to the target companies.

53. With respect to the *PV Future Share Price Analysis*, the Recommendation Statement fails to disclose the projected amounts of net debt for each of the years, as utilized by Goldman Sachs in the analysis.

54. Finally, with respect to the *Discounted Cash Flow Analysis,* the Recommendation Statement fails to disclose which measure of "unlevered free cash flow" from the forecasts was utilized by Goldman Sachs in the analysis. The Recommendation Statement also fails to disclose the specific inputs and assumptions used to derive the discount rate range of 11.0% to 14.0%. And the Recommendation Statement failed to disclose the separate concluded net present value of MuleSoft's NOL carryforwards, resulting from Goldman Sachs's NOL analysis.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

55. The Recommendation Statement also fails to disclose material information concerning the sales process. For example, the Recommendation Statement does not disclose the amount and value of the investments made by Salesforce in MuleSoft's private investment rounds. The Recommendation Statement also fails to disclose the amount and value of the contracts between MuleSoft and Salesforce, and the materiality of those contracts to MuleSoft.

56. The Recommendation Statement also fails to disclose various financial analyses performed by Goldman Sachs and provided to the Board, including those from March 4, 2018, March 7, 2018 and March 18, 2018.

57. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were

not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, MuleSoft stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

58. In addition, the Individual Defendants knew or recklessly disregarded that the Recommendation Statement omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

59. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Recommendation Statement before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Recommendation Statement omits the material information referenced above and contains the incomplete and misleading information referenced above.

60. Further, the Recommendation Statement indicates that on March 20, 2018, Goldman Sachs reviewed with the Board its financial analysis of the Merger Consideration delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to MuleSoft shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Goldman Sachs's financial analyses which has been omitted from the Recommendation Statement, and thus knew or should have known that such information has been omitted.

61. Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(e) of the Exchange Act**

62. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63. Defendants have filed the Recommendation Statement with the SEC with the intention of soliciting MuleSoft shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Recommendation Statement, which fails to provide the material information referenced above.

64. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of MuleSoft, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).

65. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, [i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

66. Specifically, and as detailed above, the Recommendation Statement violates Section 14(e) because it omits material facts concerning: (i) management's financial projections; (ii) the value of MuleSoft shares and the financial analyses performed by Goldman Sachs in support of its fairness opinion; and (iii) the sales process.

67. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Recommendation

Statement states that Goldman Sachs reviewed and discussed its financial analyses with the Board during various meetings, including on March 20, 2018, and further states that the Board relied upon Goldman Sachs's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Recommendation Statement, rendering the sections of the Recommendation Statement identified above to be materially incomplete and misleading.

68. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed tender decision if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

69. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

70. The Individual Defendants acted as controlling persons of MuleSoft within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MuleSoft and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

71. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be

misleading prior to the time the Recommendation Statement was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Recommendation Statement.

73. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

74. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

  A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

**1**      B.  Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

       C.  In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

       D.  Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

       E.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

       F.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff prays for a jury trial on all issues and in all proceedings so triable.

Dated: April 6, 2018                                    BRODSKY & SMITH, LLC


                                                        By: */s/ Evan J. Smith*
                                                        EVAN J. SMITH (S.B. # 242352)
                                                        9595 Wilshire Boulevard, Suite 900
                                                        Beverly Hills, CA 90212
                                                        Tel: (877) 834-2590

                                                        *Attorneys for Plaintiff*

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514